**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

GERALD STOKES,

                Plaintiff,

      v.

BOBBY FIGERUROA; KRISTA STONE;
DR. GOUL; and MS. JONES,

                Defendants.

CIVIL ACTION NO.: 6:21-cv-21

## REPORT AND RECOMMENDATION

       This matter comes before the Court on Defendants Figeruroa, Stone, and Goul's Motion

to Dismiss.  Doc. 34.[1]  These Defendants move to dismiss based on Plaintiff's failure to exhaust

his available administrative remedies.  The parties' fully briefed the matter.  Docs. 43, 49, 53, 55.

For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to

Dismiss.  Doc. 34.  Additionally, I **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint

against Defendant Jones for failure to exhaust.[2]  Because I have recommended dismissal of all

---

[1]     The Court previously granted Defendant Goul's motion to join Defendants Figeruroa and Stone's
Motion to Dismiss.  Docs. 41, 47.

[2]     Defendant Jones has not yet appeared in this case, and it does not appear she has ever been
served.  Doc. 25-2; Doc. 34-1 at 1 n.1.  However, Plaintiff's failure to exhaust applies equally to
Defendant Jones and, thus, Plaintiff's claims against her are also due to be dismissed.  Moreover, a
"district court can only dismiss an action on its own motion as long as the procedure employed is fair . . . .
To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to
dismiss or an opportunity to respond."  Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011)
(citations and internal quotations marks omitted).  A magistrate judge's report and recommendation
provides such notice and opportunity to respond.  See Shivers v. Int'l Bhd. of Elec. Workers Local Union
349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating a party has notice of a district court's intent
to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua
sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296

Defendants in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983 relating to events in February 2021 at Georgia State Prison.  Doc. 21.  After conducting frivolity review, the Court dismissed Defendant Georgia Department of Corrections ("GDC") and Plaintiff's claims against Defendant Warden Edwards.  Docs. 24, 30.  However, Plaintiff was permitted to proceed on his Eighth Amendment deliberate indifference claims against Defendants Figeruroa, Edwards, Goul, Jones, and Stone.[3]  Doc. 25.

Plaintiff brings a claim against Defendants for their refusal to provide treatment for his type-2 diabetes or hyperglycemia.  Doc. 21 at 5–7.  Plaintiff alleges that several times between February 18, 2021, and February 24, 2021, he was suffering from medical emergencies but did not receive medical treatment.  Id. at 6.  These medical emergencies were the result of complications from his diabetes.  Id.  As a result of this lack of treatment, Plaintiff lost consciousness, fell to the floor and hit his head, and suffered other injuries.  Plaintiff contends Defendants' failure to provide him medical treatment violates his Eighth Amendment rights and constitutes deliberate indifference to a serious medical need.  Id. at 7.

---

(N.D. Ga. 2009) (noting report and recommendation served as notice claims would be sua sponte dismissed).  This Report and Recommendation constitutes fair notice to Plaintiff his suit is due to be dismissed.  As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[3]        Defendant Stone was initially identified as Defendant Nurse Jane Doe.  Doc. 21.

In their Motion, Defendants argue Plaintiff's claims against them should be dismissed because Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit.  Doc. 34.  Plaintiff filed a Response to Defendants' Motion to Dismiss.  Doc. 43. Defendants filed a Reply.  Doc. 49.

## DISCUSSION

### I.      Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).

3

Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL

4

201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[ ] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v.

Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

## III.   Applying Turner

### A.   The Georgia Department of Corrections' ("GDC") Administrative Remedies

Georgia State Prison utilizes the GDC procedure for prisoner grievances. Doc. 34-2 at 2. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Doc. 34-3 at 3–21. Under SOP 227.02, inmates may "file a grievance about any condition,

policy, procedure, or action or lack thereof" that "personally affects the offender." Id. at 6.  The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 10.  Under SOP 227.02, original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance.  Id.  The Warden has 40 calendar days to respond to a grievance.  Id. at 13.  The Warden can request a one-time 10-day extension to respond; however, the inmate must be advised of any extension.  Id.  If the inmate is dissatisfied with the Warden's response to his original grievance, or if the time allowed for the Warden's response has expired, an inmate may appeal the decision to the Central Office. Id. at 13, 16.  An inmate has seven days from the date of the Warden's response to file a Central Office Appeal.  Id. at 16.  The Commissioner has 120 days to respond to the Central Office Appeal.  Id. at 17.

### B.     Plaintiff Failed to Exhaust His Available Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.  The parties' allegations do not conflict, as Plaintiff failed to substantively respond to Defendants' Motion.  Indeed, Plaintiff, in his Response, does not mention any attempts at exhaustion or whether he filed grievances. Doc. 43.  Further, even looking at Plaintiff's Amended Complaint, the parties' allegations do not conflict.  Doc. 21.  Therefore, Defendants' Motion is due to be granted under step one of Turner.

Plaintiff filed three grievances while at Georgia State Prison.  Doc. 34-2 at 5; Doc. 21 at 10.  Plaintiff filed a grievance on April 17, 2020, related to his commissary account and two grievances on March 31, 2021, related to his medical care.  Doc. 34-2 at 5; Doc. 34-4 at 3–6; Doc. 21 at 10.  The April 17, 2020 grievance was filed before the events complained of in this

suit and involved issues with his commissary account.  Doc. 34-4 at 4.  Thus, this grievance is not relevant to the issue of exhaustion in this case.

Plaintiff also filed two grievances on March 31, 2021—Grievance Numbers 307122 and 322610.  Id. at 5–6.  Grievance Number 322610 is not related to Plaintiff's medical issues described in the Complaint.  Instead, in that grievance, Plaintiff complained of an apparent fire at Georgia State Prison and requested mental health services as a result from the trauma associated with the fire.  Thus, Grievance Number 322610 is not irrelevant on the issue of exhaustion.  The other grievance, Grievance Number 307122, does relate to Plaintiff's medical issues but still does not demonstrate proper exhaustion.  Id. at 6.

In Grievance Number 307122, Plaintiff explains he is not receiving appropriate treatment for his hypoglycemia and he requests medical attention.  Id.  Plaintiff's grievance was denied for failing to file a sick call request to see a medical provider about treatment.  Id.  Grievance Number 307122 was not timely filed per Georgia State Prison policy and was filed after Plaintiff initiated this suit.  Under Georgia State Prison's grievance policy, Plaintiff was required to file a grievance within 10 days from the date he knew or should have known of the facts giving rise to the grievance.  Doc. 34-2 at 10.  The last event giving rise to this lawsuit occurred on February 24, 2021.  Doc. 21 at 5–7.  There is no indication Plaintiff was unaware of any the issues such that the 10-day window began no later than February 24, 2021.  Considering this, Plaintiff was required to file a grievance by March 6, 2021.  However, Plaintiff did not file a grievance until March 31, 2021.  Doc. 34-4 at 3–6; Doc. 21 at 10.  Plaintiff provides no information which would excuse him from filing his grievance within 10 days.  Thus, Plaintiff's untimely grievance means he failed to exhaust.  Woodford, 548 U.S. at 91–92 ("Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural

rules."); <u>Johnson</u>, 418 F.3d at 1159 ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA.").

Plaintiff also filed Grievance Number 307122 after he initiated this lawsuit. Plaintiff filed his Complaint on March 11, 2021. Doc. 1. Therefore, Plaintiff's only relevant grievance was not filed until weeks after he initiated this suit—on March 31, 2021. Plaintiff offers no explanation as to why he filed this suit before filing his grievance, receiving a response, or appealing the Warden's decision. Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. <u>Woodford</u>, 548 U.S. at 91– 92. Plaintiff plainly failed to comply with Georgia State Prison's grievance policy and deadlines. To properly exhaust, Plaintiff must have exhausted his administrative remedies before filing a federal civil action. <u>Johnson</u>, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."). Plaintiff did not properly exhaust because file a grievance before suing. <u>Bryant</u>, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); <u>Sewell</u>, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies); <u>Leal v. Ga. Dep't of Corr.</u>, 254 F.3d 1276, 1279 (11th Cir. 2001) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted)).

Therefore, under <u>Turner</u> step one, I conclude Plaintiff failed to exhaust his available administrative remedies before bringing suit. Consequently, the Court should **GRANT**

Defendants' Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.

**IV.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when she seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion and Plaintiff's lack of substantive response thereto, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendants' Motion to

Dismiss.  Doc. 34.  Additionally, I **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint

against Defendant Jones for failure to exhaust.  Because I have recommended dismissal of all

Defendants in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to

**CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to

appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge

failed to address a contention raised in the Complaint or an argument raised in a filing must be

included.  Failure to file timely, written objections will bar any later challenge or review of the

Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v.

Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir.

R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

       **SO REPORTED and RECOMMENDED**, this 13th day of June, 2022.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA